May it please the court. Jenny Johnson Ware on behalf of Stephen Dougan. If I could, I'd like to reserve five minutes of my time for rebuttal. Are you in the Sacramento courthouse? I'm not I'm in my house, but my virtual background is the Harvard Law School library. I thought that was a little more appropriate than my kid's bedroom. At Stephen Dugan's trial, the government successfully fought to exclude admissible evidence by arguing, and I quote, This is going to be the crux of their defense that Mr. Dugan acted innocently that he acted in good faith. That will be prejudicial to the government. Allowing the jury to consider Dugan's April 2009 email indeed would have been quite prejudicial to the government's effort to win at all costs. The government, however, is supposed to win only when it's prosecutors can win fairly dang well within the rules. The government's closing arguments in this case, give us a way to look at just how far outside those rules the prosecutors strayed during Dugan's trial. First, the government argued to the jury that Dugan redacted his checks to hide income and couldn't give it up. Even going so far as to argue that if you have a good faith belief, you don't fight tooth and nail to keep your redactions. Let me stop you for a second. So you're essentially are you, you're arguing that the language is really a constructive amendment of what what was in the indictment. But here's my question for you. Isn't the language that was provided to the jury indicates included but not limited to specifies that you can include. Isn't that sufficient to allow the jury to consider those other acts that ultimately they concluded were sufficient for the conviction. No, Your Honor, I believe it is not. And that's because the way this indictment is drafted. If you take out the specifics of those nine acts that are listed, all you're left with is a very wide allegation about conduct that allegedly occurred over a period of five years. Not even restricted in any way to what tax years were at issue or to the subject matter of anything at all under the sun. And that does not comply with the Sixth Amendment. I believe that including but not limited to violates the Sixth Amendment and the Supreme Court's interpretation of the Sixth Amendment. And a long line of progeny after that is an indictment to allege facts and circumstances. What were the actual And sort of acts that you think of constructive amendment. I want to talk about why this is a constructive evidence amendment rather than variance even conceptually. First, as I recall, it was the claiming of advertising fences, which were actually the second was concealing the existence of a large bank account of several hundred thousand dollars. That is, yes, your honor. All right. Well, it seems to me that why aren't those within some of these examples, for example, when he's falsely maintaining that. But I mean, what it was documents that underrepresented his gross income in order to substantiate his cost of goods sold figure for that year. Now, why doesn't hiding a fact that something was that was said to be an expense and therefore came off as income was actually income within that. Well, because an expense is not part of cost of goods sold that gets taken off of gross income. And the very next section of the indictment is very, very specific about providing his IRS audit representatives with false information to substantiate his 2006 expenses for clerical services. If the grand jury intended to charge that he falsified his expenses for advertising expenses, there should have been another subparagraph just like that. And that would have put Dugan on notice. Well, is. How much money he is getting essentially as pay him. And they're not really good. So there is attorney's fees. Right. Well, the cost of goods sold in this case are the amounts that he has to pay out to his clients because the 99 stay him report the entire settlement of all the damage. So cost of goods sold are what he pays to his clients, the experts and others. Advertising expenses are. I thought the cost of goods sold were. He gets because that's the cost of goods sold because he's. And the cost of it is his fees. No, no, that's not the way the IRS uses cost of goods sold when they're doing tax returns for a personal injury attorney. And the trial record is actually quite clear on that. You can walk through the testimony by the government's expert about that and what they're counting in cost of goods sold. Advertising expenses absolutely does not fit within that category. But still, I mean, if there's only one. So if you are calling something. You're calling it an advertising cost. Is that a cost of goods sold? No, no, it's not. It's an expense. It's a separate line item on a tax return that is separate and different from cost of goods sold. And. Then he says that he was. Also maintaining his gross income was one third of all IRS 199. Again, if you're hiding income. Why is that part of that? I understand the letter was about representing that it was one third. But both of these others, i.e. the bank account and the advertising expenses demonstrate why that was inaccurate. Right. That one, that act eight about the letter is referring to a very specific letter. That was very specific letter. I know. But the allegation is that he maintained that his gross income was one third of all IRS one point ninety nine. And he falsely maintained that. And one of two reasons we know he was falsely maintaining it was because he had a lot more money in income stashed away in this. Because he was representing things to be expenses, which were actually income. So why don't both of those fit into that category? Again, it's back to the one third of being that it's the cost of goods sold issue and the gross income issue and advertising expenses wouldn't be impacted. And the CD was reported on his 2006 tax return. And everything about the audit related to 2006 and 2007, not 2005 when that income was generated. So there would be no way for him to have reasonable notice. Defend against allegations that he hid a bank account that he specifically reported on his tax return that held deposits for a tax year that wasn't an issue in the audit. So in addition to the constructive amendment of the indictment, there's this rather obvious issue about hearsay being an inappropriate reason to exclude exculpatory evidence. And a major theme that the prosecutors brought at trial was that Dugan redacted checks and then fought to prevent those checks from going to the IRS. But in between those two events, Dugan sent this April 2009 email to his tax attorney saying, I've decided to produce my account information and his lawyer responded, cautioning him that he couldn't do so within his professional responsibility to his clients. Counsel, why wasn't that hearsay? Why, why wasn't it the fact that in order for it not to be hearsay, wouldn't we get into whether or not the email information or not? It's not hearsay because it's not being offered for the truth of the matter asserted. It's circumstantial evidence of his state of mind at the time he communicated that information to his lawyer. He learned about the audit in 2007, into November, 2007, in September, 2008, he gets a letter from the IRS selecting the specific income tax returns that are going to be returned and, or they're going to be analyzed. And then subsequent to that, there were a number of letters and documents requested after that for several months. And then in April of 2009, several months after, then he makes that, then there's that email counsel. So how is that contemporaneous? Well, it's right in the middle of the charged conduct. So the charged conduct in count three, we're not talking about the counts one and two, which were involved in actually preparing the false return. Count three is obstructing the IRS audit. And that conduct allegedly took place from October of 2007, all the way through November of 2012. So in December of 2008, he redacts documents and turns them over to the IRS. A few short months later, he tells his attorney, oh, no, I've decided to produce all of my information. Meanwhile, he was telling the IRS that he was doing this to protect his client's identity. And in fact, a large chunk of those checks were written to him. The checks that were written to him were almost exclusively checks that were written in 2005, which was not one of the tax years under audit. And it's very reasonable for a taxpayer to believe that when they're producing information in an audit of the 2006 tax year, they don't have to produce information from 2005. There's only one check that contained his name that was dated in 2006. And there were many, many, many checks where his name was not redacted that were deposited into the CD account. Well, how was he going to use these statements in arguing to the jury? How was he going to use? You're complaining about the exclusion of the emails? Yes. Now, what if they had been if they had been admitted, how was he going to use them? As evidence of his good faith, because he his defense was he was acting in good faith. He thought he had to file a motion to quash in order to protect client confidence. That's what they said. Isn't it? I'm sorry, I didn't I couldn't hear you. Judge Mendoza's original question. Isn't that for the wouldn't he argue that they prove the truth of what he said in them? He's trying to show that at that time he was going to produce all of the documents. So therefore, he had good faith in not producing them because his lawyer told him he had to take this other action to protect client confidence. But then it's being introduced for the truth of the statement of what his intent was. And I don't know that state of mind, what he meant, what he was going, what he was going to do, which why isn't that a fact? The truth of the fact that that's what he intended to do. It's circumstantial evidence of his state of mind at the time he communicated that instruction to his lawyer. There's no there's no narrative aspect of this. There's no storytelling. Let's separate the instruction sentences. Right. One was the second was some don't do any more research. So the part about don't do any more research, it seems to be incredibly a verbal act. But but but it doesn't get you very far. What about the other one? The other one is I've decided to produce. I'm not putting it into evidence for the truth of anything that's buried in that narrative. We need to put it into evidence to show that at that point in time, he communicated that information. It shows his state of mind at the time he made that communication, which is right in the middle of the charged conduct. So if I say I'm not going to kill that guy, is that my state of mind? Yes. I have no intention to kill that person. Yes, it is. But it's a fact. It's your statement of your state of mind. It's not your state of mind. In other words, you're saying what what you're you're representing, that you don't have this intent. So you could use the truth of the fact that you don't have that intent or you do have that. Then it would come in under the exception for 8033, because this isn't the kind of situation where he's talking about something that happened in the past. This is contemporaneous. And it's showing it's a statement about his state of mind at the time he's making that statement. So either it's not hearsay at all, which I believe is the correct application of the rules of evidence, or it would fall within the exception of rule 8033. Either way, it's admissible and it's highly relevant because it undermines the core of the government's case about whether he was acting in good faith or not, as he moved forward with the actions his attorneys recommended, which was filing the motion to quash. That took years then for the courts to decide that caused the government to argue that he was acting with bad intent that whole time. This one email undermines everything about the prosecution on this count. And it was his ability to present a defense, and it violated his constitutional right to make a defense in this case. And just to be clear, you're arguing that it's contemporaneous to the period of time of the indictment, not to a specific act, is that correct? To the period of time of the indictment, and it shows his state of mind at different points in time. So, for example, the government alleges that he was acting with bad intent to hide income when he redacted in December of 2008. So in April of 2009, when he says, give them all the documents, the jury could infer from his direction. He said, I've decided to produce my account information. I've decided to give them the account information. It, to my mind, means the same thing as give them the documents. I'm going to give it in, so you should give them. But then he forwarded it to the accountant who was responsible for producing the documents. But he didn't tell anybody to produce the documents. Because his lawyer first told him not to. Thank you. May it please the court. Jisoo Kim for the United States. I was trial counsel in this case. I'd like to turn directly to the questions that were just raised. Judge Berzon, you are correct. That statement in the email is not a directive or an order. It is the statement that is introduced for the truth of the matter. Well, part of it is, right? Excuse me, the first sentence. Part of it is. Part that says don't do any more research. That's possible that that second part is more of a directive. But that part would not be relevant to the issues at hand. The email also shows the response from Ms. Klum parents, which shows that she did not interpret his statement as an order. And the court's case, some of the cases that the defendant relies on actually support the government's position. That it is not a directive or order. Including the Garcia Villanueva case, which gives examples of a directive or an order versus beliefs and statements that are not a directive or order. So what exactly? So let's go to this. Two different kinds of state of mind. What's the difference between them? The difference between them, your honor, is that under the 8033, that would be hearsay, but an exception for the state of mind here. That does not apply because there's simply too much time for the defendant to reflect both because he is. I'm sorry, your honor. I can hear you. My provision is not in 803, but it's a loss on it. I'm sorry. The state of mind. Part about too much time. It's not in the rule, but for 8033, the three factors that the courts look at the opportunity to reflect the contemporaneousness and then relevance are the three factors that are required in order to. What's the category of state of mind? That's not here. That's not just something that hearsay. The other category that is referring to it being circumstantial evidence, your honor, here, that does not apply because, again, for those cases, including Miller looks at that, for example. In those cases, there has to be both relevance and then also the time that is looked at. So, for example, here in April 2009, it does not show his state of mind at the time he redacted, which was in December 2008 or at the time he found the petition to quash, which was three months later in July 2009. And so you can't have a showing of a state of mind from before. Approximately four months before when he actually redacted in December 2008 or when he then later continued to insist on the redactions and the petition to quash in July 2009. And if I could turn now to if there are no further questions on the April 2009 email, there are questions raised about the indictment and constructive amendment. Judge Mendoza, you asked about the language, including but not limited to. There is actually Ninth Circuit case law that talks about non exhaustive language and indictments. And one such case is the Doss case. And the government can submit a 28 J later afterwards, if that would be helpful to the panel. And in that case, they looked at the non exhaustive language of among others within the indictment to find as one of the factors to find that there was no material variance. So the indictment, the paragraphs, George Burzon, that you identified, paragraph six, as well as paragraph eight, paragraph nine. Those all cover the conduct and the evidence that was presented at trial. So since you were a trial judge, I'm going to ask the question. You're the trial judge or trial counsel. Why did you not include the evidence related to the false advertising expense and the. In the indictment. Well, Your Honor, in the indictment, if you look at paragraph nine, paragraph nine is very broad and talks about the responses, and this is at ER 612. The defendant's responses to questions and inquiries from the IRS. And that includes a broad range of conduct. The defendant was on notice. The audit notice itself included advertising as an expense. And that's at SCR 618. The request from the IRS specifically went to advertising, which is covered by paragraph nine of the indictment. And then a question that Judge Burzon brought up regarding the indictment and the income. Paragraph six is broad again and refers to underrepresenting income that covers both of the issues that were raised by the defense on appeal. And in addition, it is also critical that the courts review here under the plain error standard. And in the case of Lowe, it's a common sense, non-technical reading of the indictment. And the defense's reading of the indictment is overly technical. It does not follow Lowe's standard of the common sense, non-technical reading of the indictment. But what if the indictment had simply said, had not had any of the particulars? Would that be a valid indictment? Yes, it would have been, Your Honor, because the indictment listed all of the elements as required. And that meets the requirement for sufficiency of indictment for the language. But you didn't write it that way. In fact, you put all of this in. That's true, Your Honor. But the indictment does include, it refers to acts, plural, and including but not limited to. And then in the categories, again, there are some specific categories like paragraph seven. But there are also very broad categories like paragraph six and paragraph nine. And then Judge Berzon, you're also correct that in paragraph eight, while that refers to a specific letter, that letter covers many different topics. And that also is broader than just the narrow reading that the defense proposed. Yes, the specifics could have been left out. And the indictment would have been sufficient. But including the specifics here does not mean that the indictment was constructively amended. Because, again, there is language that specifically refers to including but not limited to, and it is expansive. The language, the specific categories here cover the two specific acts that the defense challenges on appeal. Wouldn't it be more precise to call this a variance rather than a constructive amendment? Judge Mendoza, I think that that may be correct because the variance looks at the difference in terms of facts. Even if facts presented in the indictment versus facts presented at trial, even if looked at under the variance standard, there isn't a material or fatal variance here. If you look at the facts presented at trial versus the indictment. In addition, there was not substantial prejudice to the defense. The defense did not object to the Fugitive Watch invoice when it was admitted into evidence. The defendant did not object to Mr. Erdl's testimony regarding the Fugitive Watch invoice. The defendant did not object to the instructions and instead actually agreed to the instructions. And so there was not surprise or prejudice to Mr. Dugan here, even when looked at under the variance standard. And then finally, Your Honor, if there are no further questions on the indictment, the last argument about prosecutorial misconduct. The statements by the government, both in closing and rebuttal, were based on a reasonable interpretation of the record and do not reach the level of misconduct that's claimed. Well, what was this very strange business about having the post-trial hearing with the attorneys? I gather that was because the claim was that the attorneys, that the government knew that they hadn't in fact made these misrepresentations. And so the judge was trying to get the lawyers to tell them what the government knew about what they knew. Is that basically what was going on? Basically, Your Honor, this is based off of the motion to dismiss and the allegations regarding the statements in closing. And if okay, I would like to also just focus the panel's attention on the entire sentence that's referenced rather than just the portion that the defense focuses on. The entire sentence is that this letter shows that it is not just a bald assertion of lies being told. It is an interpretation of the protest letter that was discussed. And there is sufficient evidence in the record that upon which that statement was made. But it appears that the lawyers actually originally said, well, we never actually thought that. And then when they testified, they said, well, we did. In fact, it's true that we didn't know this. But that's all kind of completely irrelevant to the question of what was in the trial record and what the government legitimately represent to the jury. Right? Yes, Your Honor, that is not relevant to the evidence that was in the record at the time. It's because there was an accusation that the statement was false. And that is why the trial court then got into those issues. It wasn't that it was false, but the government knew it was false. Right. Exactly, Your Honor. Yes. And the testimony. What is there in the record then that demonstrates that the judge's ultimate conclusion was that they either were in cahoots with the lawyers or misinformed their lawyers. You didn't really know which it was. Right, Your Honor. So the evidence in the record that supported that statement, there's extensive evidence in the record of that. And that goes to the actual drafting of the protest letter. And this is at SCR 740, where Mr. Humans emails both the defendant as well as the accountant and provides a red line draft where the fee is changed. That is not corrected in the final protest letter, which is at SCR 753. The final letter includes and remains the final, the incorrect fee representation. And then if you look at the final accountings, and this is the client invoices that show the amount of fee that Mr. Dugan actually collected. And that's at SCR 837 through 1067, where it shows that almost all of his fee collections in 2006 and 2007 were 40%. And there is also an email from Ms. Colson, and this is at ER 421 through 423, where she is repeating the incorrect statement about the fees, and that is not corrected as well. So again, the draft protest letter that has the incorrect fee changed based on Mr. Dugan's fee contract is not changed in the final, which is at SCR 753. But I added Mr. Dugan's defense was he didn't know anything. The letter, he didn't even clear the letter. There was no evidence that he cleared the letter. Your Honor, so this is an issue that the defense raised in their reply brief. The statement in closing was that this letter shows it was not an affirmative assertion. It was an interpretation of the letter. The reference to Mr. Dugan actually reviewing and approving the letter, that evidence did come in at the post-trial evidentiary hearing. The defendant's assertions that that was not discovered until after trial are not accurate. There's actually a reference in the record, and when I say the record here, I mean the record that is before the court on appeal, not the trial record. There was emails during that same time period that show Mr. Dugan reviewing and also approving the letter, including similar language. Does that answer your question, Judge? And that was not post-trial, it was during the trial. That was the evidence, the document that specifically talks about the review and approval was post-trial. The government did have versions of that email before trial, and I share that just as a response to a statement. What was there to substantiate? What is there to substantiate is that he received the drafts, saw that the fee had been changed to the lower incorrect amount, that those were not corrected, and that the final included the incorrect fee amount. He also did not correct Ms. Colson's statements in the same chain of emails in the drafting of the protest letter, where she also states again the incorrect fee amount. And then all of the final accountings themselves, Your Honor, and this was the reference within closing, that the final accountings are also evidence from which there is a reasonable inference that the representation in the letter was incorrect, and that was done with Mr. Dugan's awareness and involvement as well. Okay. Thank you. Thank you. Thank you, I appreciate it. Quickly, on the misrepresentations of the record, the government's brief on appeal consistently misrepresents what's in the trial record and what's not in the trial record. And if you look at page 75 and 76 and 77, where they argue that there's evidence in the record to support the closing argument that Dugan lied to his attorneys, that's just not correct. What they're citing is testimony from the post-trial hearing, the exhibit that was produced in response to the post-trial subpoena. There was no evidence in the trial record that Dugan ever saw that letter. And they can't make it so by citing post-trial exhibits as if they were trial exhibits, like they did in their brief. Didn't Dugan misrepresent the contingency? To whom? He never misrepresented the contingency fee to the lawyers. Certainly not. There's no evidence of that in the trial record. And there's no evidence that he misrepresented it, even in the post-trial record. There's evidence, at best, of omissions, that he failed to correct, possibly, assumptions that were made by the lawyers. Why isn't this harmless in the sense that that's one small piece of what it said that he did wrong? But most of it was about representations made to the IRS, not to his lawyers. And why wasn't there more than enough evidence of that kind that the jury would have? Mr. Dugan made no direct representations to the IRS. Everything was done through his accountants. And so a very critical part of the defense was differentiating what he did versus what his accountants and his lawyers did. And the government's proof failed miserably in terms of showing that Mr. Dugan was actually the source of any of these misrepresentations, as opposed to his accountant trying to make up for what she did in the return. Things like his doctoring of the advertising means, the hiding of the CD, the fact that he did write checks to himself and then reject them. And those were all things he did, right? There's no evidence that he doctored an advertising invoice. There's evidence that he redacted his name on one check that was deposited into the 2006 check that was deposited into the account. Why was he doing that? Why was he redacting checks that were in the wrong time period? In the other year, and I don't know, I'd have to think more about whether that matters or not, but still he was redacting them. And he was representing that his reason for not giving them was his concern about his clients, not that it was the wrong year. We don't have that information in the record. The government doesn't have that proof. What proof, I'm sorry? The government has not proven that he was making those representations to his accountants, as opposed to his accountants making those representations to the IRS. But is this a conspiracy between his accountants and his lawyers? Is that the basic theory of the defense? No, the basic theory of the defense is that his accountants did a terrible job preparing his tax returns, which the jury seemed to believe because they acquitted him on that count. And then through the audit, tried to defend what they had done, which was use of improper accounting methods and things that were truly the accountant's mistakes and not Mr. Dugan's mistakes. And so it's critically important what he did versus what the accountants did. Okay. Okay, thank you both. We'll go on to the last case of the day. Trouble here. Waves. Somebody give me the name. Oh, here we go. United States versus Jack now.
judges: Schroeder, Berzon, Mendoza